IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

UNITED STATES OF AMERICA

v.  CRIMINAL ACTION NO. 3:13-00003

NADIA ANN CARTER

**MEMORANDUM OPINION AND ORDER**

Pending is Defendant's motion to dismiss the indictment. ECF No. 23. For the reasons stated below, the motion is **DENIED**.

I.   BACKGROUND

Defendant stands indicted of making a false declaration before the court, in violation of 18 U.S.C. § 1623. ECF No. 1. The charge stems from Defendant's testimony at her brother's October 23, 2012 detention hearing. At that hearing, the presiding magistrate judge was trying to determine where Defendant's brother, Jason Johnson, was living. The magistrate judge stated the purpose of the hearing, "if I can't determine where [Johnson] exactly lives, he's going to be detained today." Detention Hearing Tr., ECF No. 25-3, at 23.

Defendant, who was present at the detention hearing, was called to testify on her brother's behalf. After being sworn, Defendant was questioned by Mr. Johnson's attorney, the AUSA, and the magistrate judge regarding where Mr. Johnson lived. The indictment charges that in response to these questions, Defendant made the following false declarations while under oath:

    Q:    . . . And does Mr. Johnson live with you?
    A:    Yes, he does.
                             \*   \*   \*
    Q:    Approximately how long has he lived with you?

> A: Years and years.  At least—at least five years.
>
> * * *
>
> Q: Can you tell the court over what period of time he's lived at your residence?
> A: Approximately five years.
> Q: And your testimony is that that has been continuous during that entire five-year period?
> A: Yes.  He has stayed with Nick on and off, but for short periods of time.
>
> * * *
>
> Q: What address is on that document?
> A: 1847 Eastwood Avenue.
> Q: That's where you live?
> A: Correct.
> Q: That's where your brother lives?
> A: Correct.

ECF No. 1 ¶ 3; Detention Tr. 24-30.  The indictment alleges that these statements were false because Defendant "knew . . . that [her brother] resided at 2926 Third Avenue . . . and had not continually resided with her."  ECF No. 1.  Defendant also testified that Mr. Johnson receives utility bills at 1847 Eastwood Avenue and keeps clothes there.  Detention Tr. 25.  She stated that although he lived with her, she could not account for his whereabouts every night.  Detention Tr. 25.

The Court now turns to the parties' arguments and the applicable legal standards.

## II.   ANALYSIS

### A.   Legal Standards

Rule 12 of the Federal Rules of Criminal Procedure permits defendants to file a pre-trial motion alleging a defect in the charging document.  Fed. R. Crim. P. 12(b)(3)(B).  An indictment must contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged."  Fed. R. Crim. P. 7(c)(1).  The Fourth Circuit has recognized that "[t]o pass constitutional muster, an indictment must (1) indicate the elements of the offense and fairly inform the defendant of the exact charges and (2) enable the defendant to plead double jeopardy in subsequent prosecutions for the same offense."  *United States v. Williams*, 152 F.3d 294, 299 (4th

Cir. 1998) (citing *United States v. Sutton*, 961 F.2d 476, 479 (4th Cir. 1992)).  Generally, an indictment is sufficient if it tracks the language of the statute, accompanied "with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged."  *Hamling v. United States*, 418 U.S. 87, 117-18 (1974) (quoting *United States v. Hess*, 124 U.S. 483, 487 (1888)).  In determining the sufficiency of an indictment, courts look "at the contents of the subject indictment 'on a practical basis and in [its] entirety, rather than in a hypertechnical manner.'"  *United States v. McLeczynsky*, 296 F.3d 634, 636 (7th Cir. 2002) (quoting *United States v. Smith*, 230 F.3d 300, 305 (7th Cir. 2000)).  For purposes of resolving a motion to dismiss attacking the sufficiency of an indictment, the allegations of the indictment must be taken as true.  *United States v. Stillwell*, 799 F. Supp. 615, 617 (S.D. W. Va. 1992) (citing *United States v. Sampson*, 371 U.S. 75, 76 (1962)).  In this case, Defendant challenges the indictment on the basis that it fails to state an offense.

As a matter of law, the answer to a fundamentally ambiguous question may not form the basis for a perjury charge.  *United States v. Sarwari*, 669 F.3d 401, 407 (4th Cir. 2012) (citations omitted).  Fundamental ambiguity, however, "is the exception, not the rule."  *Id.* (quoting *United States v. Farmer*, 137 F.3d 1265, 1269 (10th Cir. 1998)).  A court cannot "dismiss a charge of perjury when it is entirely reasonable to expect a defendant to have understood the terms used in the questions."  *Id.* (quoting *United States v. Long*, 534 F.2d 1097, 1101 (3d Cir. 1976)).  A question is fundamentally ambiguous "only when it is not a phrase with a meaning about which men of ordinary intellect could agree, nor one which could be used with mutual understanding by a questioner and answerer unless it were defined at the time it were sought and offered as testimony."  *Id.* (citations omitted).  "When a question is not 'fundamentally ambiguous,' but merely susceptible to multiple interpretations, and a defendant's answer is true under one

understanding of the question but false under another, the fact finder determines whether the defendant knew his statement was false." *Id.* (citations omitted).

**B.   Indictment**

In this case, Defendant argues that the indictment should be dismissed because the questions posed to her at the detention hearing were so ambiguous that her responses could not be considered a crime under the charged statute. In response, the Government contends that the questions asked of Defendant were not fundamentally ambiguous, and even if they were susceptible of multiple interpretations, her responses were nonetheless false.

First, the Court must determine whether the phrase "lives with" is fundamentally ambiguous as used in the questions posed to Defendant regarding her brother. "A defendant may not succeed on a claim of fundamental ambiguity by isolating a question from its context." *Sarwari*, 669 F.3d at 408 (quoting *Farmer*, 137 F.3d at 1269). The context of the questions posed to Defendant at her brother's detention hearing was made abundantly clear to Defendant by the magistrate judge. Immediately before Defendant was called to testify, the magistrate said in Defendant's presence, "if I can't determine where [Mr. Johnson] exactly lives, he's going to be detained today, because I need to know where he lives, where he's been living, and where he intends to live." Detention Tr. 23. The magistrate judge wanted to ascertain where Mr. Johnson would stay—where he would live—if released on bond. People "of ordinary intellect" could agree that when asked where Mr. Johnson "lived," or if Mr. Johnson "lived with" Defendant, the questioners referred to the location Mr. Johnson physically spent most of the time.

Indeed, Defendant herself demonstrated that she shared this common understanding of the questions. Before Defendant was called to the stand and put under oath, the magistrate judge asked her, "has Mr. Johnson been living with you?" Detention Tr. 22. In response to this

4

question, which used the same phrase she now claims is ambiguous, Defendant replied, "He stays with Nick, you know, sometimes but *as far as physically being there most of the time*, yes, he lives with me." Detention Tr. 22 (emphasis added). The Court sees no fundamental ambiguity in these questions, and at the time the questions were asked, Defendant demonstrated a common understanding of the questions as well.

Defendant also argues that the indictment itself supports a finding of ambiguity because it uses the word "reside," which she contends is a legal term, as the definition of "lives with." ECF No. 23 at 4. Specifically, Defendant notes that the indictment alleges that Defendant was asked whether Mr. Johnson "live[s] with [her]." ECF No. 1 ¶ 3. The indictment further alleges, however, that Defendant's responses to these questions were false because she knew that her brother "*resided* at 2926 Third Avenue . . . and had not continually *resided* with her." ECF No. 1 ¶ 4 (emphasis added). The Court does not believe that this discrepancy of language in the indictment is a fatal flaw. As Defendant herself recognized in her motion, "[r]eside, or residence, is a legal term 'which usually just means bodily presence as an inhabitant in a given place.'" ECF No. 23 at 4 (quoting Black's Law Dictionary (7th ed.)). Although Defendant was not asked at her brother's detention hearing where he "resided," she demonstrated that she understood the questions asked of her—using the phrase "lives"—were to determine where Mr. Johnson was "physically being . . . most of the time." Detention Tr. 22. In the Court's view, there is no conflict and no ambiguity in the questions asked of Defendant while she was under oath, such that the indictment fails to state an offense or is otherwise deficient.

Finally, Defendant claims that the responses she gave while under oath were literally true, which precludes a prosecution for perjury. Defendant relies on *Bronston v. United States*, 409 U.S. 352 (1973). In *Bronston*, the defendant was charged with violating the federal perjury

5

statute, 18 U.S.C. § 1621, for the following exchange while the defendant was under oath at a bankruptcy proceeding:

> Q. Do you have any bank accounts in Swiss banks, Mr. Bronston?
> A. No, sir.
> Q. Have you ever?
> A. The company had an account there for about six months, in Zurich.

*Bronston*, 409 U.S. at 354. It was undisputed that while Mr. Bronston did not have a Swiss account at the time he was questioned, he did have a personal account there in the past. It was also undisputed that his company had an account in a Zurich bank for six months. *Id.* at 354-55. In other words, while his response was arguably evasive, it was literally true. The Supreme Court reversed Mr. Bronston's conviction, holding that the perjury statute is not to be loosely construed, and a charge of perjury cannot be predicated upon a statement that is literally true, even if misleading. *Id.* at 360-61.

    Defendant claims that her statements were literally true because her brother did live with her. She argues that it is possible for individuals to have more than one residence at a time. Therefore, she reasons, although the Government has produced evidence that Mr. Johnson resided elsewhere, that evidence does not render her statements untruthful. The Court concludes, however, that the *Bronson* literal truth defense does not apply in this case. As the Fourth Circuit has explained, "the *Bronston* literal truth defense is a narrow one. It applies only where a defendant's allegedly false statements were *undisputedly* literally true." *Sarwari*, 669 F.3d at 406 (citations omitted) (emphasis in original). Therefore, the "literal truth defense does not apply in cases in which 'the focus is on the ambiguity of the question asked.'" *Id.* at 407 (quoting *United States v. Boskic*, 545 F.3d 69, 92 (1st Cir. 2008)). "Nor does it apply to 'an answer [that] would be true on one construction of an arguably ambiguous question but false on another.'" *Id.* (quoting *United States v. Slawik*, 548 F.2d 75, 86 (3d Cir. 1977)). The Court finds that the literal

6

truth defense does not apply here, where the truth or falsity of Defendant's statements arguably depends upon the ambiguity of the questions asked. Furthermore, her statements under oath were not *undisputedly* literally true. Defendant previously argued that the questions asked of her were ambiguous, and she may present that theory to a jury.

Because the Court finds no fundamental ambiguity in the questions underlying Defendant's perjury charge, this case is one where "the meaning of a prosecutor's question and the truthfulness of a defendant's answer [is] best left to the jury." *Farmer*, 137 F.3d at 1269; *see also United States v. Mubayyid*, 658 F.3d 35, 63 (1st Cir. 2011) ("Where a question is only arguably ambiguous, the issue of the defendant's guilt is properly one for the jury.") (cited in *Sarwari*, 669 F.3d at 408). Accordingly, Defendant's motion to dismiss the indictment is **DENIED.**

### III.   CONCLUSION

For the reasons discussed above, the Court concludes that the indictment in this matter is sufficient and properly states an offense. Consequently, the Court **DENIES** Defendant's motion. Furthermore, the Court **FINDS** that a pretrial motions hearing is unnecessary to dispose of Defendant's motion to dismiss the indictment. The hearing scheduled for April 4, 2013, at 10:00 a.m. is therefore **CANCELED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel and the defendant, the U.S. Attorney's Office, the U.S. Probation Office, and the U.S. Marshals' Service.

ENTER:   April 2, 2013

_____
ROBERT C. CHAMBERS, CHIEF JUDGE